IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SALIMA BATOKA,<br><br>      Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA; U.S. CITIZENSHIP AND IMMIGRATION SERVICES, "USCIS"; ALEJANDRO MAYORKAS, U.S. Department of Homeland Security Secretary; UR JADDOU, Assistant Secretary of Homeland Security USCIS; and JEFFREY BEIL, Field Office Director of Omaha, Nebraska USCIS,<br><br>      Defendants. | **8:23CV349**<br><br>**MEMORANDUM AND ORDER** |

  This case involves Plaintiff's complaint for judicial review of Defendants' denial of his application for U.S. citizenship. It comes before the Court on Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. Filing No. 28. Defendants argue Plaintiff's second amended complaint "contains insufficient creditable facts that, taken as true, would support the conclusion that Batoka is entitled to naturalize" and should be dismissed. Filing No. 30 at 7. For the reasons set forth herein, the Court finds the second amended complaint states a claim upon which relief can be granted and accordingly denies Defendants' motion to dismiss.

**I. BACKGROUND**

  Salima Batoka filed a complaint under 8 U.S.C. § 1421(c) which authorizes district-court review of the agency denial of his application for naturalization. Filing No. 23. Defendants are the United States, the United States Citizenship and Immigration Services, and various agency officials (collectively, "USCIS").

1

As set forth in Batoka's second amended complaint, *id.*, he is a citizen of Togo and has two children, one born in 2013 and one born in 2021. *Id.* at 2. Foziatou Atakora is the biological mother of both of Batoka's children, but Batoka has been married to Kokoe Domlan since 2015. *Id.*

In 2016, Batoka applied for and was selected for the diversity visa program. Filing No. 23 at 2. As part of his application, he filled out a "DS-260" form, indicating, in relevant part, that he was married with no children. At the time, Batoka had one child, but alleges "the DS-260 form lacked practical instructions and the questions were ambiguous without definitions; Mr. Batoka misunderstood the instructions to mean that he was to list include [sic] only the children of him and his spouse." *Id.* at 3. He therefore did not include his child born in 2013 on the DS-260 form "because the child was born at a time he was not married, and his spouse was not the child's biological mother." *Id.* Batoka asserts he "did not intentionally withhold this information and would have included his children on the initial forms had he understood the process." *Id.* As a result of the diversity-visa interview, Batoka was granted lawful permanent residence. *Id.*

On August 19, 2022, Batoka applied for U.S. citizenship using form N-400. *Id.* Batoka listed his two children on the form. *Id.* at 4. Question 31 asked, "Have you EVER given any U.S. Government officials any information or documentation that was false, fraudulent, or misleading?" Filing No. 29-2 at 24; Filing No. 29-3 at 16. Batoka answered "No." Filing No. 29-2 at 24; Filing No. 29-3 at 16.

On January 30, 2023, USCIS interviewed Batoka regarding his citizenship application. Filing No. 23 at 4. The "Record of Sworn Statement" from the interview included the following exchange between Batoka and the USCIS officer:

2

> 4. Q: Did you tell the interviewing officer [at the diversity visa stage] about your child born in 2013?
> A: No, he did not ask me.
>
> 5. Q: Did you declare your marriage on your DV application?
> A: At this time, I had my daughter, but I was not married. The officer asked me if my wife and I had any kids[,] and my response was no because my daughter was not my wife's biological child.
>
> 6. Q: You declared your marriage, why not your children?
> A: Yes, but I didn't declare my child because she was too young[,] and I didn't think it was important.
>
> 7. Q: The DV application specifically asks about children and whether you have any or not, not how old they are?
> A: It was only that she was too young[,] and I did not think she needed to be listed.
>
> 8. Q: Is the child born in 2013, another relative such as niece, nephew, etc[.]?
> A: No, the child is my biological child.
>
> 9. Q: Does your wife know about both of the children?
> A: No, she knows about the first child, but not the second.

Filing No. 29-2 at 37–38.

On February 23, 2023, USCIS denied Batoka's N-400 application because it determined he was not lawfully admitted for permanent residence due to failing to declare his child on the DS-260. Filing No. 23 at 4; Filing No. 29-5. USCIS also noted Batoka had an extramarital affair which could have destroyed his marriage and may have precluded him from establishing good moral character. Filing No. 23 at 4; Filing No. 29-5.

Batoka asks the Court to conduct a de novo review of Defendants' denial of his N-400 naturalization application. Filing No. 23 at 5. Defendants have moved to dismiss, arguing Batoka cannot plausibly allege he is entitled to the granting of his N-400 application. In support of their motion to dismiss, Defendants submitted an index of

3

evidence including a copy of Batoka's N-400 interview testimony, a copy of Batoka's N-400 form, a copy of Batoka's DS-260 submission, and a copy of USCIS's denial. Filing No. 29. Batoka does not object to Defendant's inclusion of these documents and does not contest their veracity. The Court concludes it can consider these documents as they are necessarily embraced by the second amended complaint. *See Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) ("Though 'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleading." (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003))).

## II.   ANALYSIS

### A. Applicable Law

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *See id.* (describing a "two-pronged approach" to evaluating such motions: First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

8 U.S.C. § 1421(a) confers "[t]he sole authority to naturalize persons as citizens of the United States . . . upon the Attorney General." However, under 8 U.S.C. § 1421(c), "[a] person whose application for naturalization . . . is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides." Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law." *Id.*

The requirements for naturalization are as follows:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles

5

of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a). USCIS contends Batoka fails to state a claim upon which relief can be granted because his application for naturalization was lacking (and therefore correctly denied) under the first and third prongs of these requirements. As to the requirement for good moral character, USCIS argues Batoka cannot allege he had good moral character during the requisite period 1) because he provided false testimony at his N-400 interview and 2) because he had an extramarital affair and conceived a child out of wedlock, all of which he concealed from his wife. Third, USCIS argues Batoka cannot allege he was "lawfully admitted for permanent residence" because he was inadmissible at the time of his admission due to having claimed he had no children on his diversity visa application. The Court addresses these three arguments in turn.

### B. Inability to Allege Good Moral Character Based on False Testimony at the N-400 Interview

USCIS first argues that Batoka cannot plausibly allege that he was of good moral character for purposes of naturalization because he presented false testimony at his naturalization interview. In particular, he answered "no" to Question 31 of the Form N-400 which asks, "Have you EVER given any U.S. Governmental officials any information or documentation that was false, fraudulent, or misleading?" Filing No. 29-2 at 24. As set forth above, the INA provides that an applicant for citizenship must prove, in part, that he or she is "a person of good moral character." 8 U.S.C. § 1427(a). The INA also states, in relevant part, that "[n]o person shall be regarded as, or found to be, a person of good moral character who . . . is, or was . . . one who has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C. § 1101(f)(6). USCIS alleges Batoka cannot state a claim that he was of good moral character because his negative

6

response to Question 31 constitutes false testimony for the purpose of obtaining an immigration benefit because he had previously falsely represented on his diversity-visa Form DS-230 that he had no children.

As an initial matter, Batoka argues that USCIS did not base its denial of his naturalization petition on a lack of good moral character and that the Court should therefore not entertain this argument. Batoka is correct that USCIS appeared to base its denial solely on him not having been lawfully admitted for permanent residence. Filing No. 29-5 at 3–4. USCIS went on to note that Batoka's "extramarital affair(s) during the statutory period *could* lead to the destruction of your existing marriage and *may* preclude you from establishing good moral character," but this rational did not appear to be the basis for the denial. *Id.* at 4 (emphasis added). But Batoka misapprehends the scope of the Court's review. 8 U.S.C. § 1421(c) provides for de novo judicial review of the denial of an application for naturalization and expressly states "the court shall make its own findings of fact and conclusions of law." Thus, to the extent Batoka contends the Court can only consider the legal reasoning advanced at the agency level, such an assertion is incorrect.

Turning to the merits of the argument, USCIS argues that Batoka's inaccurate answer to Question 31 belies any claim that he was of good moral character. Batoka does not dispute that his negative answer to Question 31 was incorrect and that he was under oath. He argues, however, that he did not make this statement with the requisite intent because he was not aware he had incorrectly omitted his children from the DS-260 form. *See* 8 U.S.C. § 1101(f)(6) ("No person shall be regarded as, or found to be, a person of good moral character who . . . is, or was . . . one who has given false testimony

7

for *the purpose of obtaining any benefits* under this chapter. (emphasis added)). USCIS argues Batoka cannot plausibly allege that his admittedly false testimony at his N-400 interview was not "for the purpose of obtaining" an immigration benefit. 8 U.S.C. § 1101(f)(6). It argues the fact Batoka made the misrepresentation on his N-400 application, the purpose of which was for Batoka to obtain citizenship, shows that he answered Question 31 incorrectly for the purpose of obtaining an immigration benefit.

Batoka argues that the requisite mental state requires an "*intent to deceive* the Government for the purpose of obtaining an immigration benefit." Filing No. 31 at 12 (emphasis added). While some courts have imposed a deceptive-intent element on the good-character requirement, *e.g.*, *Ramos v. I.N.S.*, 246 F.3d 1264, 1266 (9th Cir. 2001) ("For a witness's false testimony to preclude a finding of good moral character, the testimony must have been made orally and under oath, and the witness must have had *a subjective intent to deceive* for the purpose of obtaining immigration benefits." (emphasis added)), USCIS correctly points out that the Eighth Circuit has not done so and has instead implied that no subjective deceptive intent is required. *See, e.g.*, *United States v. Cheboss*, 76 F.4th 1138, 1144 (8th Cir. 2023) (finding in the criminal context that the requisite intent for determining whether an applicant lacked good moral character was simple whether "she acted to obtain immigration benefits").

But even without requiring USCIS to demonstrate an intent to deceive, Batoka has still plausibly pleaded that his false statements were not made with the intent to obtain an immigration benefit. In particular, his complaint alleges that he misunderstood the initial questions on his DS-260 visa application when he did not include his child. Filing No. 23 at 3. He then correctly understood the N-400 application to be asking about his children

and included them on that application. Therefore, he plausibly alleges that while his DS-260 application contained false information, he was not aware it did, and he incorrectly answered Question 31 on the N-400, not with the intent to obtain an immigration benefit, but because he was confused and unaware of his prior error. During the N-400 interview, the officer told Batoka, "The DV application specifically asks about children and whether you have any or not, not how old they are?" Filing No. 29-2 at 37. Batoka again explained his confusion in thinking that the child did not need to be listed. *Id.* USCIS urges that the fact Batoka was asked about the DS-260 omission at his N-400 interview requires the Court to determine Batoka knew he had made previous misrepresentations and therefore answered "No" to Question 31 knowing such an answer to be inaccurate. Filing No. 30 at 23–24. But the documentation submitted by the Government is vague about the timing of this questioning. It is not clear if Batoka was asked whether he had previously provided false information to U.S. officials *after* being informed that his interpretation of the DS-260 was incorrect (e.g., such as would support the finding the Government urges that Batoka answered "No" to Question 31 understanding that he had incorrectly answered the DS-260). Rather, it appears that Batoka answered "No" to Question 31 before the oral interview portion in which the officer informed him that the DS-260 had, in fact, asked about all his children. If that is true, then Batoka did not have the requisite mental state at the time he answered "No" to written Question 31. Determining whether Batoka's explanation of his understanding of the questions is credible, what intention he had in making the misrepresentations, and assessing the timing of the questions at his N-400 interview are matters for the factfinder, not questions to be resolved at the pleading stage.

Alternatively, USCIS argues Batoka's conduct falls short of the standards of the average Nebraskan, compelling a finding that he cannot be of good moral character. Filing No. 30 at 25–26. The INA provides that in addition to the enumerated categories of those lacking good moral character, a person may also be found to be without good moral character for "other reasons," the so-called "catchall" provision. See 8 U.S.C. § 1101(f). The agency regulations instruct USCIS to "evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). In an unpublished opinion, the Eighth Circuit approved of using the "standards of the average citizen" when assessing good moral character under § 1101(f)'s catchall provision. See *Haciosmanoglu v. Tritten*, No. 21-2584, 2022 WL 781047, at *1 (8th Cir. Mar. 15, 2022). However, the moral standards of the average Nebraskan, and whether Batoka's conduct comported with them, are factual questions inappropriate for resolution on a motion to dismiss. Batoka has adequately stated a claim upon which relief can be granted in this respect.

### C. Inability to Allege Good Moral Character Based on Extramarital Affair and Child Born out of Wedlock and Concealing Same from His Spouse

USCIS next argues that Batoka cannot plead that he was of good moral character for purposes of naturalization because he had an extramarital affair, conceived a child out of wedlock, and concealed this information from his spouse. Filing No. 30 at 27–29.

USCIS's argument falls under the INA's "catchall" provision which allows the factfinder to find an applicant lacks good moral character for any "other reason." See 8 U.S.C. § 1101(f). The agency regulations provide that an applicant for naturalization lacks good moral character if, absent extenuating circumstances, he or she "[h]ad an

extramarital affair which tended to destroy an existing marriage." 8 C.F.R. § 316.10(b)(3)(ii). However, Batoka's second amended complaint pleads that his affair did not destroy his marriage and that he remains married to his spouse. Filing No. 23 at 4. Thus, on its face, Batoka's second amended complaint plausibly states a claim. USCIS argues that although the pair remain legally married, the affair may still have "tend[e]d to destroy the intangible aspects of a marriage" but such an argument is speculative at best and would require finding additional facts not contained in the operative complaint. Filing No. 30 at 28.

The Government makes the same argument that Batoka lacks good moral character because having an affair, conceiving a child out of wedlock, and concealing this information from one's spouse does not comport with the moral standards of the average Nebraskan. *Id.* at 28–30; see 8 C.F.R. § 316.10(a)(2) (instructing USCIS to "evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence"). As with its similar argument about Batoka's omissions on his applications, any determination concerning the moral standards of the average Nebraskan requires factual determinations premature at this stage of the case. Batoka has plausibly stated a claim upon which relief can be granted.

**D. Inability to Allege He Was Lawfully Admitted for Permanent Residence**

Lastly, USCIS argues it is entitled to dismissal because Batoka does not plausibly allege that he was lawfully admitted for permanent residence because he was, in fact, inadmissible at the time he obtained LPR status. Filing No. 30 at 31.

As set forth above, an applicant for naturalization must have been "lawfully admitted for permanent residence." 8 U.S.C. § 1427(a). A person is not lawfully admitted for permanent residence "if he was not legally entitled to permanent resident status when he received it." *United States v. Daifullah*, 11 F.4th 888, 896 n.4 (8th Cir. 2021). The INA makes inadmissible an individual "who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other [immigration] benefit." 8 U.S.C. § 1182(a)(6)(C)(i). USCIS argues that because Batoka misrepresented that he had no children on his diversity visa application, he was inadmissible and not lawfully admitted for permanent residence. Filing No. 30 at 31.

USCIS argues Batoka does not plausibly allege that USCIS failed to prove two separate requirements of § 1182(a)(6)(C)(i): whether the omission of Batoka's children on the form was willful and whether it was material. As to willfulness, Batoka pleads that he failed to include his children on the DS-260 application because he misunderstood the questions, or due to what he terms an "innocent mistake." Filing No. 23 at 4. As with USCIS's argument regarding Batoka's intention on the N-400 claim, Batoka's credibility and his reason for omitting his child on the DS-260 is a determination of fact premature for the pleading stage of this case. Because Batoka plausibly alleges that any misrepresentations he made on his DS-260 were not willful, he has stated a claim that he was admissible. In other words, Batoka has plausibly pleaded that USCIS failed to prove one of the required elements for inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(i) (willfulness). Accordingly, the Court need not address USCIS's alternative argument that Batoka's representations were material because Batoka's plausible allegation that his

statement was not willful already precludes USCIS's inadmissibility argument. USCIS is not entitled to dismissal of Batoka's claim.

### III. CONCLUSION

Batoka's second amended complaint states a valid claim upon which relief can be granted. Defendants' bases for moving for dismissal require the Court to engage in factual findings which contradict the pleadings or credibility determinations which are premature for this stage of the case. Accordingly, their motion to dismiss is denied.

IT IS ORDERED:

1. Defendants' motion to dismiss, Filing No. 28, is denied. Defendants are ordered to answer, or otherwise respond, to the second amended complaint within 14 days of the date of this order.

Dated this 7th day of June, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

13